IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| ANGELINE MEAD,<br><br>    Plaintiff,<br>  v.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant. | Case No.: 3:24-cv-01399-AN<br><br><br>OPINION AND ORDER |

Plaintiff Angeline Mead brings this action against defendant United States of America, alleging claims of battery, intentional infliction of emotional distress ("IIED"), and negligence under the Federal Torts Claim Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 *et seq.* Plaintiff alleges that defendant committed these torts when a federal officer shot her with an impact munition while she attended a protest in July of 2020. On November 20, 2024, plaintiff filed a motion for joinder, which the Court construes as a motion to consolidate. On February 18, 2025, defendant filed a motion to dismiss. After reviewing the parties' filings, the Court finds this matter appropriate for decision without oral argument. Local R. 7-1(d). For the reasons stated below, plaintiff's motion is DENIED, and defendant's motion is GRANTED in part and DENIED in part.

## LEGAL STANDARD

A.  **Failure to State a Claim**

To survive a Federal Rule of Civil Procedure ("FRCP") 12(b)(6) motion to dismiss for failure to state a claim, a complaint must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); Fed R. Civ. P. 12(b)(6). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The court "must accept as true all factual

allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party." *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014). Bare assertions that amount to mere "formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." *Iqbal*, 556 U.S. at 681.

**B.      Consolidation**

"If actions before the court involve a common question of law or fact, the court may . . . (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." Fed. R. Civ. P. 42(a).

A party seeking consolidation must file a motion to consolidate "in each case to be consolidated." Local R. 42-3. Additionally, the motion "must include":

> "(1)   The case number, case title, and assigned judge of every related case pending in the District of Oregon.
> (2)   The case number, case title, assigned judge, and court location of every other related case pending in any other state or federal court.
> (3)   The common question of law or fact at issue in each case.
> (4)   The status in each case of all pending motions, Court imposed deadlines, case management schedules, trial dates, etc.
> (5)   The reason that the cases should be reassigned and managed by a single judicial officer.
> (6)   The position of the other parties, if known.
> (7)   The scope of consolidation requested, *e.g.*, for hearing on a motion; for pretrial and discovery; or for all further proceedings, including trial."

*Id.*

## BACKGROUND

**A.      General Allegations**

The complaint begins by describing the general backdrop of the 2020 protests nationally and in Portland. Plaintiff also raises certain legal developments related to protest crowd control and munitions. *See* Compl., ECF [1], ¶¶ 1-7.

Plaintiff alleges that on May 28, 2020, thousands of people began months of sustained protests in Portland near the Mark O. Hatfield Courthouse, and the Portland Police Bureau met these protests with generalized violence, including pepper balls, batons, sonic weapons, and tear gas. *Id.* ¶ 3.

Between June 9, 2020, and June 30, 2020, emergency court orders, city directives, and state law reforms placed limitations on the use of tear gas and other force. *Id.* ¶ 4. On July 1, 2020, federal law enforcement officers and agents were deployed in Portland, where they "engaged in crowd-dispersal operations, deploying tear gas and impact munitions well beyond the immediate surroundings of federal property and with the apparent purpose of quelling lawful protests in support of Black lives rather than protecting federal property." *Id.* ¶ 16. Plaintiff alleges that defendant's agents "repeatedly failed to employ de-escalation strategies or tactics to mitigate violence" and instead "escalated violence on a nightly basis by targeting peaceful and lawfully dispersing individuals for injury or assault without probable cause, pursuing protesters, observers, and journalists through the streets blocks beyond federal property while simultaneously firing pepper-spray balls, rubber bullets, and other munitions" and "concealing the pathways" to disperse with tear gas and flashbang devices. *Id.* ¶ 18.

On or after July 22, 2020, federal agents built a chain-link fence around the courthouse with plywood and concrete blocks, which plaintiff alleges escalated the situation by permitting agents to fire munitions while protected within the front steps of the courthouse and from an elevated position. *Id.* ¶ 19.

On July 23, 2020, District Judge Michael H. Simon issued a temporary restraining order in *Index Newspapers, LLC v. City of Portland*, No. 3:20-cv-01035-SI, "exempting journalists and legal observers from orders to disperse and restraining the U.S. Department of Homeland Security and the U.S. Marshals Service from arresting, threatening to arrest, or using physical force directed against any person who they know or reasonably should know is a journalist or legal observer." *Id.* ¶ 20. Plaintiff alleges that this implies that federal agents should issue crowd dispersal orders before using crowd-control devices. *Id.* Instead, plaintiff alleges that federal agents did not change their behavior and instead directed excessive force at plaintiff. *Id.* ¶ 22.

Plaintiff alleges that throughout the month of July, between approximately 11:30 p.m. and 1:00 a.m. each night, federal agents "emerged from Hatfield Courthouse and fired tear gas and tossed and launched flashbang grenades into SW Third Avenue, Lownsdale Square, and SW Fourth Avenue,

sometimes without any warning and regardless of whether there were triggering acts of protestor violence, property damage, or threats . . . toward federal agents." *Id.* ¶ 23. The agents, located behind the protective barriers, would then "fire[] pepper balls through and over the fencing at protestors" and then enter the street, "shooting protestors with rubber bullets, pepper-spray balls, and other impact munitions regardless of whether the protesters were engaged in acts of violence, peacefully dispersing or leaving the area, were in retreat, or were moving away from federal property or standing blocks away." *Id.* ¶ 24.

On July 29, 2020, Governor Kate Brown announced that she had reached an agreement with defendant to withdraw all federal agents from Portland by August 4, 2020. *Id.* ¶ 34. The next day, President Donald Trump announced on Twitter that if Governor Brown could not "clear out, and in some cases arrest the Anarchists & Agitators in Portland . . . the Federal Government will do it for her. We will not be leaving until there is safety!" *Id.* ¶ 35. Plaintiffs allege that after this Twitter announcement, the federal agents increased their use of force. *Id.* ¶ 39.

Plaintiff alleges that, on information and belief, defendant and its agents obtained surveillance information on her and other protesters in the protest zone "from fixed and mobile cameras, cell phone data, drone footage, and other digital media." *Id.* ¶ 42.

**B.    Individual Allegations**

On the evening of July 25, 2020, plaintiff joined a Black Lives Matter protest across the street from the Hatfield Courthouse. *Id.* ¶ 43. At or around 1:00 a.m. on the morning of July 26, 2020, plaintiff saw federal officers fire tear gas into the crowd. *Id*. ¶ 45. At that same time, plaintiff heard an announcement over a loudspeaker, indicating "something about unlawful assembly" and that "munitions may be deployed." *Id.*

Plaintiff walked away from the officers and talked with her friends about how to leave the area. *Id.* Plaintiff then noticed a vehicle and officers coming towards her group and firing tear gas at retreating protestors. *Id.* ¶ 46. Plaintiff and her group continued to walk away from the approaching officers. *Id.* ¶ 47. Halfway through the next city block, plaintiff looked back to see how close the officers were. *Id.* As she was looking back, an officer "specifically targeted" plaintiff and shot her in the head with

a high-velocity impact munition. *Id.* ¶¶ 47, 53.  The officer was roughly twenty to thirty feet away, and the impact munition hit plaintiff in her right eye. *Id.*  Plaintiff immediately lost vision and had pain and bleeding in her right eye. *Id*. ¶ 48.

At a nearby bus stop, a medic bandaged plaintiff's right eye to stop the bleeding. *Id.*  A volunteer ambulance then transported plaintiff to the Emergency Department at Oregon Health Science University Hospital ("OHSU"). *Id.* ¶ 49.  A CT scan of her eye sockets revealed a right eyelid laceration that required several stiches. *Id.* ¶ 50.  Later that day, plaintiff was discharged with an initial diagnosis of retinal detachment and instructed to return for a more comprehensive eye examination. *Id.*

On July 29, 2020, plaintiff returned to OHSU for a comprehensive right eye examination. *Id.* ¶ 51.  Plaintiff was diagnosed with a vitreous hemorrhage, traumatic iritis, and a round hole in her right retina. *Id.*  Plaintiff received laser retinopexy surgery to repair the round hole. *Id.*

**C.      Procedural Background**

Plaintiff filed a Standard Form 95 ("SF-95") within two years of the alleged injury. *Id.* ¶ 10.  Six months has passed since plaintiff filed the SF-95, and plaintiff has not received a response from any of the federal agencies to which her SF-95 was sent. *Id.*

Plaintiff initiated this action on August 26, 2024. *Id.* at 24.  On November 20, 2024, plaintiff filed a "motion for joinder," seeking to consolidate this action with *Kristiansen v. United States*, 3:24-cv-01719-IM, which is before District Judge Karin J. Immergut.  Pl. Mot. for Joinder ("Mot. to Consolidate"), ECF [5], at 5.  Defendant did not respond to this motion.

On February 18, 2025, defendant moved to dismiss plaintiff's complaint for failure to state a claim.  Def. Mot. to Dismiss ("MTD"), ECF [10], at 12.

## DISCUSSION

**A.      Defendant's Motion to Dismiss**

Defendant argues that plaintiff does not state plausible claims for battery, IIED, or negligence.  The Court addresses plaintiff's claims in turn.

1.  *Battery*

A district court analyzing a claim brought under the FTCA applies substantive state law. *Bennett v. United States*, 44 F.4th 929, 933 (9th Cir. 2022) ("The FTCA [] incorporates substantive state law as federal law to determine liability."); *see* 28 U.S.C. § 1346(b). Under Oregon law, "[t]he elements of a battery claim are well established":

> '[T]he conduct which brings about the harm must be an act of volition on the actor's part, and the actor must have intended to bring about a harmful or offensive contact or put the other party in apprehension thereof. It is not necessary that the contact do actual physical harm—it is sufficient if the contact is offensive or insulting.'"

*Johnson v. Jones*, 269 Or. App. 12, 17, 344 P.3d 89 (2015) (quoting *Bakker v. Baza'r, Inc.*, 275 Or. 245, 249 (1976)). Thus, a "battery is a voluntary act that is intended to cause the resulting harmful or offensive contact." *Harris v. Pameco Corp.*, 170 Or. App. 164, 169, 12 P.3d 524 (2000) (citation modified).

Oregon law provides, however, that a law enforcement officer is justified in using physical force so long as the force used was not more than necessary under the circumstances to accomplish the officer's law enforcement duties. *Gigler v. City of Klamath Falls*, 21 Or. App. 753, 763, 537 P.2d 121 (1975). Only "the use of excessive force by a police officer . . . can give rise to civil liability for battery." *Ballard v. City of Albany*, 221 Or. App. 630, 641, 191 P.3d 679 (2008).[1] This standard mirrors the "objective reasonableness" standard that governs a federal civil rights claim premised on the use of excessive force by a law enforcement officer. *See Price v. City of Sutherlin*, 945 F. Supp. 2d 1147, 1157 (D. Or. 2013).

Defendant concedes that plaintiff alleges a voluntary act that resulted in a harmful or offensive contact. *See* Def. Reply, ECF [14], at 5. The parties disagree, however, on whether plaintiff must plead sufficient facts to establish excessive force at the motion to dismiss stage. *See* Pl. Resp., ECF [13], at 5; Def. Reply 3. Another court in this district has "read[] *Gigler* and *Ballard* as requiring a plaintiff asserting a battery claim against a law enforcement officer to allege that the force used was unreasonable."

---

[1] Plaintiff argues that *Ballard* only applies to a claim for battery "in making an arrest," but not when there was no arrest. Pl. Resp., ECF [13], at 7. Plaintiff offers no explanation for why officers should be subject to ordinary battery liability when dispersing a crowd but only be liable for the use of excessive force in making an arrest.

*Kristiansen v. United States*, No. 3:24-cv-01719-IM, 2025 WL 2049290, at *3 (D. Or. July 22, 2025).

Even so, the Court finds that plaintiff pleads sufficient facts to allege that the use of force regarding the shooting of an impact munition was unreasonable. Plaintiff bases her battery claim on the use of impact munitions. Plaintiff alleges that as she was walking away from a protest in compliance with a dispersal order, she looked back and was hit in the right eye with an impact munition fired by a federal officer who "specifically targeted"[2] plaintiff from approximately twenty to thirty feet away. Compl. ¶¶ 45-47, 53. Taking plaintiff's allegations as true, as the Court must at this stage, plaintiff "allege[s] some facts about what happened before the alleged acts of force and what she was doing when the force was used" and "make[s] it plausible that the force used was more than reasonably necessary under the circumstances." *Kristiansen*, 2025 WL 2049290, at *3 (citing *Gonzales v. City of Clovis*, No. 12-cv-00053, 2012 WL 4671179, at *7 (E.D. Cal. Oct. 3, 2012)). Accordingly, plaintiff states sufficient facts to allege a battery claim.

    2.    *IIED*

To state a claim for IIED under Oregon law, a plaintiff must allege that (1) the defendant intended to inflict severe emotional distress upon her, (2) the defendant's acts caused the plaintiff's severe emotional distress, and (3) the defendant's acts "constituted an extraordinary transgression of the bounds of socially tolerable conduct." *McGanty v. Staudenraus*, 321 Or. 532, 543, 901 P.2d 841 (1995) (quoting *Sheets v. Knight*, 308 Or. 220, 236, 779 P.2d 1000 (1989)).

"Whether the conduct alleged is sufficiently extreme or outrageous to be actionable is a fact-specific inquiry, one to be made on a case-by-case basis considering the totality of the circumstances." *Delaney v. Clifton*, 180 Or. App. 119, 130, 41 P.3d 1099 (2002). The totality of the circumstances includes the conduct itself as well as any special relationship of the parties, characteristics of the plaintiff that were

---

[2] Defendant argues that plaintiff's assertion that the unidentified officer "specifically targeted" her is conclusory. Def. Reply 5 (quoting Compl. ¶ 45; Pl. Resp. 10). However, at the motion to dismiss stage, the Court must "accept as true all factual allegations in the complaint." *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014). Drawing all inferences in plaintiff's favor, the Court finds it plausible to infer that an officer who aimed a munition at plaintiff from twenty to thirty feet away was "specifically targeting" plaintiff.

known to the defendant, and the setting in which the conduct occurred. *House v. Hicks*, 218 Or. App. 348, 360, 179 P.3d 730 (2008). "The most important factor is whether a special relationship exists between a plaintiff and a defendant[.]" *Id.* "In fact, the lack of such a relationship generally defeats a conclusion that the conduct is actionable through an IIED claim[,]" *Delaney*, 180 Or. App. at 130, as a "'special relationship' between the parties has played a role in every case in this state involving [a successful claim of IIED,]" *Christofferson v. Church of Scientology*, 57 Or. App. 203, 209, 644 P.2d 577 (1982), *rev. den.*, 293 Or. 456, 650 P.2d 928 (1982), *cert. den.*, 459 U.S. 1206 (1983).

Here, the Court finds that plaintiff does not allege that the officers' actions amounted to an extraordinary transgression of the bounds of socially tolerable conduct. Plaintiff concedes that she does not plead any special relationship. Pl. Resp. 11. In *House*, the Oregon Court of Appeals identified "government officer-citizen" as a possible special relationship. 218 Or. App. at 360. However, in support of that proposition, the court cited to *Williams v. Tri-County Metropolitan Transportation District of Oregon*, which characterized that relationship specifically as between a public transportation driver and a disabled citizen. *See id.* (citing, in relevant part, *Williams*, 153 Or. App. 686, 958 P.2d 202 (1998), *rev. den.*, 327 Or. 431, 966 P.2d 222 (1998) and specifying the relationship as "government employee-disabled citizen"); *Williams*, 153 Or. App. at 693 ("Fundamental to our conclusion is plaintiff's disabled status. . . . Equally fundamental to our holding is the driver's relationship to plaintiff. As a provider of public transportation, the relationship is a special one within our society[.]").

Plaintiff's general allegations regarding defendant's "unprecedented and sustained violence and intimidation on the people of Portland" and "repeated[] fail[ure] to employ de-escalation strategies or tactics to mitigate violence and protect the rights of peaceful assembly and protest[,]" Pl. Resp. 12, also do not support her argument. "[C]onduct unbecoming [of] peace officers" is generally not sufficient to support an IIED claim. *Pakos v. Clark*, 253 Or. 113, 132, 453 P.2d 682 (1969). Moreover, given the setting in which the alleged conduct occurred—federal agents employing munitions and other crowd control methods following a dispersal order—plaintiff does not allege any facts that show that this use of force was unrelated to legitimate law enforcement objectives or intended to inflict severe emotional harm.

8

Considering the totality of the circumstances, plaintiff does not sufficiently state an IIED claim. However, the Court grants leave to amend if plaintiff believes she can cure these defects.

3. *Negligence*

To state a claim for negligence under Oregon law, a plaintiff must allege:

> "(1) that [the] defendant's conduct caused a foreseeable risk of harm, (2) that the risk is to an interest of a kind that the law protects against negligent invasion, (3) that [the] defendant's conduct was unreasonable in light of the risk, (4) that the conduct was a cause of [the] plaintiff's harm, and (5) that [the] plaintiff was within the class of persons and [the] plaintiff's injury was within the general type of potential incidents and injuries that made [the] defendant's conduct negligent."

*Solberg v. Johnson*, 306 Or. 484, 490-91, 760 P.2d 867 (1988), *abrogated on other grounds by Deckard v. Bunch*, 358 Or. 754, 370 P.3d 478 (2016).

The Court finds that plaintiff adequately states a negligence claim. Defendant argues that plaintiff fails to allege facts showing that the officer acted unreasonably. As explained with respect to the battery claim, however, plaintiff does allege facts showing that the use of force was unreasonable. Plaintiff alleges that she was complying with a dispersal order and walking away from a protest when a federal officer intentionally shot her in the head with an impact munition and injured her. *See* Compl. ¶¶ 45-47. Plaintiff also alleges that the officer "appl[ied] a quantum of force that was grossly disproportionate [to plaintiff's presence at a protest]" and "sho[t] impact munitions indiscriminately or directly at lawful protestors . . . including when those protestors were displaying no violence or resistance . . . in violation of the Fourth Amendment[.]" *Id*. ¶ 65(c), (f), (g). Plaintiff also alleges that the officer "knew or should have known that [p]laintiff posed no proportional threat of harm to person or property" but fired anyway. *Id*. ¶ 65(j). Accordingly, plaintiff states sufficient facts to allege a negligence claim.

**B.    Plaintiff's Motion to Consolidate**

Construing plaintiff's motion as a motion to consolidate,[3] the Court finds that consolidation

---

[3] Plaintiff titles this motion a "Motion for Joinder" or "Motion to Join Related Case" and cites to FRCP 20(a)(1)(A), which provides for permissive joinder of parties as plaintiffs. *See* Fed. R. Civ. P. 20(a)(1)(A). However, upon review of the motion, it is clear that plaintiff seeks to consolidate cases rather than join a plaintiff.

9

is not warranted.  As an initial matter, plaintiff's motion does not satisfy the Local Rules' requirements for consolidation.  Plaintiff's arguments concern a history of similar cases involving *Bivens* claims being consolidated in this district and this case and *Kristiansen* sharing similar sets of facts.[4]  *See* Mot. to Consolidate 2-5.  However, Local Rule 42-3 requires more than just alleged common facts.  In her motion, plaintiff does not include "the status in each case of all pending motions, Court imposed deadlines, case management schedules, etc."  Local R. 42-3(4).  A review of the docket of *Kristiansen* also shows that plaintiff did not file a motion in that case, even though plaintiff seeks to consolidate *Kristiansen* with this case.  *See* Local R. 42-3.[5]

Even as to the alleged common facts, the facts of *Kristiansen* and this case contain notable differences.  Although the two cases involve claims against the government arising out of the same series of protests, they arise out of different interactions with officers on different nights: the plaintiff in *Kristiansen* bases her claims on events occurring July 20, 2020, 2025 WL 2049290, at *1, and plaintiff's claims here involve events occurring on July 26, 2020.  Additionally, in *Kristiansen*, the plaintiff alleges that she was affected by "red chemical agents" and "flash bangs" and was arrested, *id.*, whereas, here, plaintiff alleges that she was shot with an impact munition while walking away from a protest.  For the foregoing reasons, the Court denies plaintiff's motion to consolidate with leave to renew.

---

[4] Plaintiff also claims that this case was joined with *Urbani v. United States*, No. 3:23-cv-01920-AN, which is also before this Court.  This assertion is incorrect.  Plaintiff has not joined *Urbani* as a plaintiff, and the two cases have not been consolidated in any way.

[5] Additionally, Judge Immergut recently issued an opinion and order on the motion to dismiss in *Kristiansen*.  *See* 2025 WL 2049290.  It is thus also somewhat unclear to the Court the scope of consolidation that plaintiff is requesting.  *See* Local R. 42-3(7).

## CONCLUSION

Accordingly, plaintiff's Motion for Joinder, ECF [5], is DENIED with leave to renew, and defendant's Motion to Dismiss, ECF [10], is GRANTED in part and DENIED in part. Plaintiff's second claim for intentional infliction of emotional distress is dismissed with leave to amend. Any amended complaint must be filed within fourteen (14) days of the date of this Opinion and Order.

IT IS SO ORDERED.

DATED this 28th day of August, 2025.

_____
Adrienne Nelson
United States District Judge